George **RONDINELLI, Jr.,** Plaintiff,

v.

Ralph **CORAPI,** as President of Local 101, Utility Division, Transport Workers Union of America, AFL–CIO, and Local 101, Utility Division, Transport Workers Union of America, AFL–CIO, Defendants.

No. CV–81–0004.

United States District Court, E. D. New York.

May 14, 1981.

---

Hall, Clifton & Schwartz by Arthur Z. Schwartz, New York City, for plaintiff.

Sipser, Weinstock, Harper, Dorn & Leibowitz, by Belle Harper, New York City, for defendants.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

This is an action brought pursuant to Section 102 of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. 412.[1] Specifically, plaintiff alleges in his first amended complaint that he has been denied the rights of membership in defendant Local 101, Utility Division, Transport Workers Union, AFL–CIO ("Local 101") as a result of being refused membership in that Local in violation of 29 U.S.C. §§ 411(a)(1) and 529.[2] He seeks de-

claratory and injunctive relief directing Local 101 to admit him to membership in the Local, retroactive to September 30, 1980.

Shortly after filing this action, plaintiff moved for a preliminary injunction. With the consent of the parties, the trial of the action has been advanced and consolidated with the hearing of the application for preliminary relief pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure ("FRCP"). Trial was had before the undersigned, sitting without a jury on March 9, 1981. What follows sets forth the undersigned's findings of fact and conclusions of law, as required by Rule 52(a), FRCP.

Plaintiff, George Rondinelli, is an employee of Brooklyn Union Gas Company, Inc. ("BUG"), a public utility whose service area covers Staten Island, Brooklyn, and part of the Borough of Queens. Mr. Rondinelli was first employed by BUG as a laborer in 1962. Thirty days after he was first employed he became a member of Local 3 of the International Brotherhood of Electrical Workers, AFL–CIO ("Local 3"). In 1970 he became a shop steward for Local 3, and since 1974 he has been the Chairman of the Local 3 bargaining unit at BUG—a position he continues to hold, along with his membership in Local 3, to date. Within BUG he has risen through various so-called "physical" jobs as laborer, helper, and "A" mechanic. In November 1979, following several unsuccessful attempts to transfer to what he considered a better position,[3] plain-

---

1. Section 102 provides:
   "Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate."

2. Section 411(a)(1) provides:
   "*Equal Rights.* Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations of such organization's constitution and by-laws."

Section 529, *inter alia*, prohibits a union from disciplining "any of its members for exercising any right to which he is entitled under the provisions of this chapter."
Section 402(*o*) of the same title defines the word "member" as including "any person who has fulfilled the requirements for membership in such organization."

3. On one of these prior occasions, plaintiff was told that he could have the job he sought, only to find out a few days' later that the offer of the position was being withdrawn because the duties of the job would place him in a position in which he might have to investigate allegations of theft or destruction of company property by fellow employees. BUG concluded that these duties might conflict with plaintiff's obligations as Chairman of Local 3 to represent

tiff secured a job as a service application inspector in the marketing and advertising division of the company.

Plaintiff is a New Jersey resident and prior to 1979 worked exclusively in Staten Island, as, it appears, do all the other members of Local 3 who are employed by BUG. Pursuant to agreement, the Local 3 bargaining unit at BUG, whose membership is approximately 250, is the certified representative of BUG's employees who work in Staten Island. Local 101 is certified by the NLRB to represent all BUG employees "working in or permanently assigned to operations in the Boroughs of Brooklyn and Queens, New York." When plaintiff took the position as service application inspector,[4] he was told that he would have to work in Brooklyn one or two days a week. As it has turned out, plaintiff has had to work in Brooklyn and Queens approximately 70% of his time. In addition, he picks up and leaves off paper work connected with the job at the company's principal offices in Brooklyn at least once a week.

Prior to starting his new job, plaintiff was told by a BUG official that the company would have to get the "okay" of the President of Local 101 to have plaintiff work at least part of his time on "this side of the water," i. e., in Brooklyn; and he was given assurances by the same official that this had been done. (Whether it was done in fact is not established by the evidence, since neither of the two Presidents of the local who testified was questioned on the subject.) Whatever the significance of this exchange, if it occurred, there is no basis for believing that the President of Local 101 at this point was conceding that, by working part of his time in Brooklyn, plaintiff became entitled to representation by Local 101 or to membership in it.[5]

Nor, despite his having been put on notice as to the anomaly of his position as a Local 3 member working in part in a Local 101 area, did plaintiff take the position he presently espouses—that he is entitled to membership in Local 101—for some time after his taking his new job, despite the provisions of Local 101's by-laws requiring all employees within the Local 101 bargaining unit to become members within 30 days of employment. BUG as well did not consider plaintiff as eligible for Local 101 membership, since it failed to notify the Local of his new position, despite its usual practice of doing so when any new member of the bargaining unit was hired. The Local 101 delegate in the marketing and advertising division, Mr. O'Hara, welcomed Mr. Rondinelli as a new fellow employee in the department. However, apart from astutely recognizing the problems presented by having the Chairman of the Staten Island Local working at least a part of his time in the Local 101 area, Mr. O'Hara took no steps to have plaintiff admitted to membership.

Plaintiff conceived of the idea of applying for membership in Local 101, while at the same time remaining a member of Local 3, during the course of the contract negotiations by both Locals for new contracts in the summer of 1980—some nine months or more after he first took his new job. During the course of these negotiations plaintiff arrived at the conclusion that he, his fellow members of Local 3, and the

members of that Local in grievances with the company.

4. The job of service application inspector appears to involve on-site inspections of applications for service by commercial, industrial, and residential customers, including determining the appropriate point of entry, the need for easements, main extensions, and the off-site coordination of the efforts of various BUG departments on service applications.

5. While the parties have suggested that the geographical division of the company's franchise area outlined above is absolute, it is clear from the evidence that it is not and that from time to time employees cross "over the water" to assist their colleagues in another borough. In all events, the situation of the union employee who worked on a regular basis in both areas of the company's operations appears from the evidence unique. As a result no inference can be drawn from Local 101's "okay," assuming that it was given, except that an unusual situation would be treated as an exception to the generally applicable rules rather than as an amendment to them.

members of Local 101 had been forced to accept a contract less favorable than the one which could have been obtained by a coordinated bargaining effort on the part of the two Locals, as a result of defendant Corapi's negotiating efforts carried on independently of Local 3. Thereafter, plaintiff told defendant Corapi that he intended to become a member of Local 101 with the expressed purpose of displacing defendant Corapi as President of Local 101. In response, defendant Corapi inquired as to Local 3's position with regard to plaintiff's desire to become a member of Local 101.

By letter of September 30, 1980, plaintiff wrote Corapi requesting an application form [6] and enclosing a personal money order to cover the $25 initiation fee as well as a letter from the Local 3 Business Representative, stating:

"George Rondinelli, Jr. has indicated to me that he would be better able to function in his position with the Brooklyn Union Gas Company as a member of Local 101. Local # 3 would have no objection to this as long as he maintains his good standing in our organization."

By letter of October 6, 1980, defendant acknowledged receipt of plaintiff's letter and stated:

"I will raise this issue at our next Executive Board Meeting. I am returning your $25.00 check pending a decision."

Plaintiff responded to this letter by letter dated October 9, 1980, again forwarding his initiation fee and stating, *inter alia*:

"I would like to know if every new member's name submitted to the Executive Board of Local 101 T.W.U. has to be approved, and have any new members requesting membership with Local 101 ever been turned down by the Executive Board & if so, for what reason.

"When will the Executive Board meet to consider my application for membership?

"I am therefore enclosing my initiation fee check for $25.00 once again for membership into Local 101, pending the Board's approval, and back-date my membership as per check of September 30.

"I hope this matter will be resolved immediately so I will not have to take legal action against Local 101 and members of the Executive Board & the T.W.U. for denying my request for membership."

By letter of November 3, 1980, defendant Corapi responded to this latest missive as follows:

"At the last meeting of the Local Executive Board which was held on October 31, 1980 a decision on your application for membership was postponed pending additional information.

"I would appreciate your responding to the following:

"1) Describe in complete detail the tasks and functions which you are responsible for in your present position.

"2) Why do you think this position should be in Local 101 rather than in Local 3?

"3) Are there any other positions which are currently in Local 3 which you feel should also be in Local 101?"

To this letter, plaintiff did not respond. Instead, a letter from his counsel, dated November 14, 1980, to defendant stated:

"I have examined the by-laws of Local 101 as well as the Constitution of the Transport Workers Union and find nothing which authorizes your delay in accepting Mr. Rondonelli's [sic] membership application. Mr. Rondinelli is a member of your certified collective bargaining unit and has a right to join Local 101. The interrogatories posed in your November 3 letter should not have to be answered prior to his acceptance into membership."

Again, litigation was held out as the only alternative to plaintiff's admission to membership by December 1, 1980, retroactive to September 30. Plaintiff was not admitted to membership as requested, and in January

---

**6.** Under Article XIII of the TWU International Constitution: "Any person seeking membership shall be required to file, with the Secretary-Treasurer of the Local Union, an application for membership."

of this year plaintiff instituted this lawsuit claiming that he had been denied membership in Local 101 despite the fact that he fulfilled all the requirements for membership and that this action had been taken as discipline of a member for his criticism of defendants in violation of 29 U.S.C. §§ 411(a)(1) and 529.

Both aspects of plaintiff's case turn on the question whether plaintiff is currently a "member" of Local 101 within the meaning of 29 U.S.C. § 402(o)—that is, whether plaintiff "has fulfilled the requirements for membership in such organization." I conclude that he has not and, accordingly, that defendants are entitled to judgment dismissing the complaint.

Plaintiff conceives of the issue here as being whether he has, after trial, established that the position of service application inspector which he currently holds is within both the geographical and historical limits of the Local 101 collective bargaining unit. Neither aspect of plaintiff's claim is self-evidently true, since a substantial portion of plaintiff's work continues to be performed in Staten Island, which is outside the Local 101 bargaining unit geographically and since the job of service application inspector has never been among the schedules of job classifications for which Local 101 is the recognized bargaining agency under its collective bargaining agreement with BUG.[7]

However, the issue is not whether, after trial in this Court, plaintiff can establish that his position is within the bargaining unit, but rather, whether he can, as he has done, deny the union an opportunity to inquire into that question and at the same time contend that he has fulfilled the requirements of membership. I conclude that he cannot. The minimal requirement of the TWU Constitution, that those seeking membership "file with the Financial Secretary-Treasurer of the Local Union, an application for membership" implies an obligation on the part of those seeking admission to submit themselves to reasonable and good-faith inquiry as to whether the position they hold with the employer entitles them to what they seek from the Union. In the circumstances here presented plaintiff has failed to establish that the questions put to him by defendant Corapi on behalf of Local 101 were either unreasonable or made in bad faith. As a result plaintiff has failed to establish that he has fulfilled the requirements of membership, that he has been denied any benefits extended to members or that he has been disciplined as a member for any activities on his part.

The reasonableness of defendants' inquiry is apparent not only because of the substantial question as to where the job fits within the geographical limits of the bargaining units represented by the two Locals, but also because of the peculiar history of plaintiff's present job classification, assuming he is geographically in the unit represented by Local 101. It is, thus, undisputed that the position of service application inspector was treated as an excluded management position by BUG and Local 101 until the early 1970's, when, in the language of the arbitrator who attempted to resolve the dispute—

"[b]ecause of contentions recently made by the Union that the nature of the work performed by certain individuals in the excluded classifications or categories has changed during the years since the original certification was issued, the Union proposed that a number of these excluded employees now be included in the unit it represents." (Decision of Arbitrator Cohen of Sept. 30, 1977, p. 1–2)

Such bargaining unit covers and applies to all employees for the work usually performed by them in the classification and job titles set forth in appropriate schedules and made a part hereof. The Union is also recognized as bargaining agency for employees in new classifications hereafter established by mutual agreement and covered by this agreement."

---

**7.** Article I of the Agreement has, at all relevant times, provided:

"The Company recognizes the Union as the exclusive bargaining agency for wages, hours and other conditions of employment for all of the employees of the Company in the bargaining unit set forth in the certification of the National Labor Relations Board dated February 1, 1961, in Case No. 2–RC–11131.

The dispute which arose because of this proposal was submitted to arbitration by the parties. The arbitrator determined that the classification of service application inspector should be added to the bargaining unit.

Matters did not, however, rest there. Subsequent to the arbitration award, BUG and Local 101 sat down to negotiate further with respect to the wages and conditions of employment of the job classifications proposed to be added to the bargaining unit pursuant to the arbitrator's award. In this negotiation the company and the Local agreed as to the wages and conditions of twenty-six of the positions involved in the award. With respect to two positions—that of maid and that of service application inspector, both in the sales service department—it was agreed that, notwithstanding the arbitrator's award, these two positions would be "eliminated." While it is the position of plaintiff that the agreement was simply an agreement not to agree at that time as to the appropriate wages and conditions of employment of the position of service application inspector because it was contemplated that the one employee in this category would be promoted to another job, this position is difficult to accept in view of the evidence that negotiations did go forward with regard to other positions which had no incumbents at the time. Moreover, even if there is a distinction between jobs without existing incumbents, which the company expected to hire for, and jobs such as that of service application inspector, which the company had no intention of filling, this does not explain the use of the word "eliminated," as reflected on the company's work papers prepared in connection with the negotiation, to describe a job classification intended to remain within the bargaining unit, when, as, and if it was ever filled again.

In all events, the position of service application inspector became vacant in the fall of 1978 contemporaneously with the parties' agreement referred to above. The work was distributed among four industrial application inspectors. In October 1979, a year later, as noted above and pursuant to what can only be called a special accommodation between the company's director of industrial relations and the Chairman of one of the two Locals with whom the director had to deal in handling the company's labor relations, plaintiff was, at his request, given a position as service application inspector.

All concerned appear to have assumed that, since the job was being given to the Chairman of Local 3, the job classification would be added to the Local 3 bargaining unit. This appears a reasonable explanation of the offer of the job being cleared with the President of Local 101. This also appears to be the only reasonable explanation for the inclusion of the job in the schedules of jobs in the copy submitted to the printer of the 1980 collective bargaining agreement between Local 3 and the company. This also explains why plaintiff did not apply in a timely fashion to become a member of Local 101, despite his awareness that he would be working in part in what was traditionally Local 101 territory. This also explains why plaintiff did not withdraw his dues check-off authorization for Local 3 or otherwise take any steps to regularize his relations with what he now claims is his exclusive bargaining representative. In all events, it is clear that the job of service application inspector was not considered by anyone to be clearly a part of the Local 101 bargaining unit at the time of plaintiff's application.

What has been said might suffice to establish defendants' good faith in inquiring by letter of November 3, 1980, as to the nature of plaintiff's work and as to the basis for plaintiff's conclusion that "this position should be in Local 101 rather than Local 3." Moreover, since the bona fides of any claim that plaintiff's work was, in fact, performed within the Local 101 bargaining unit might well be affected not only by plaintiff's professed intention of unseating defendant Corapi, but also by any intention on plaintiff's part to "cede" other positions to Local 101, it is no evidence of bad faith, and it was not unreasonable for defendant to inquire whether there were "any other positions which are currently in Local 3

which you feel should also be included in Local 101."

Since plaintiff has failed to carry his burden of establishing that he has met the requirements of membership in Local 101, he is not a "member" of the Local for purposes of the LMRDA or entitled for injunctive relief from this Court.

SO ORDERED.